# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2012

No. 11-10025

Lyle W. Cayce
Clerk

BROADSTAR WIND SYSTEMS GROUP LIMITED LIABILITY COMPANY;
BROADSTAR DEVELOPMENTS, LIMITED PARTNERSHIP,

Plaintiffs - Appellees

v.

THOMAS STEPHENS; T.G. STEPHENS CAPITAL LIMITED LIABILITY
COMPANY,

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-369

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Thomas Stephens and a business partner developed and patented wind
generator technology. When their company, BroadStar, encountered financial
difficulty, they sought and received financial assistance from Jim Barnes who

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-10025

acquired a controlling interest in their company. BroadStar ultimately declared bankruptcy and controversy arose regarding the rightful owner of two patents. BroadStar sought a declaratory judgment regarding ownership of patents between itself and its subsidiaries and Stephens. The district court held that the patents are the property of BroadStar Developments, a wholly owned subsidiary of BroadStar Wind Systems Group. Stephens appeals. We AFFIRM the ruling of the district court.

## FACTS AND PROCEEDINGS

Thomas Stephens invented and patented technology related to electric generators and wind turbines. In 2003, he met fellow inventor Steve Else who had previously worked in the energy sector. Together, Stephens and Else formed a company known as X-Blade Systems ("X-Blade") where they worked to create a specialized wind turbine with the potential for numerous practical energy generating applications. X-Blade was a holding company designed to legally possess the patents developed by Stephens and Else. After learning of a turbine company bearing the same name, Stephens and Else changed the name of their company to BroadStar Developments ("Developments") in 2008. Between 2003 and 2008 their company obtained patents for several inventions. In March of 2009, Patents 7,370,828 ("828") and 7,365,448 ("448"), the patents in question in this case, were owned by Developments.

As the economy soured in the fall of 2008, Developments began facing financial difficulties. At that time, Else sought third-party capital investments. To facilitate these solicitations, Else, Stephens, and other members of Developments created BroadStar Wind Systems Group LLC ("Systems") to house both the intellectual property and working apparatus of engineers and other personnel who developed and tested technology. Stephens assigned his stake in Developments to Systems in exchange for a thirty percent ownership interest in

No. 11-10025

Systems and took the title Chief Innovator. Else also assigned his interest in Developments to Systems and took the title President and CEO.

Jim Barnes wanted to invest in Systems and negotiated the terms of his investment from December 2008 to March 2009. The parties were represented by counsel during the negotiations. While the negotiations were ongoing, Systems needed a bridge loan to remain solvent and Barnes offered a $750,000 loan with Systems' intellectual property serving as collateral. Systems collateralized all intellectual property assigned to Developments for the bridge loan and pledged it to Barnes. The loan documents defined the "assignor" as Systems, including in the definition "any subsidiary thereof, including but not limited to BroadStar Developments LP." The 828 and 448 patents were named in this agreement.

In March 2009, Barnes and Systems came to an investment agreement. Barnes established an investment vehicle, BroadStar Investment Company, and committed $6 million to Systems in exchange for a controlling interest. Stephens and Else approved the transaction which was memorialized in a Purchase and Sale Agreement. The Agreement named the 828 and 448 patents as part of Systems' "Proprietary Rights."

At the time he signed the Purchase and Sale Agreement, Stephens also signed an Employment Agreement negotiated by his counsel. The Employment Agreement discussed Systems' rights to certain intellectual property. Stephens believes this agreement gave him ownership of the patents and Systems received a non-exclusive royalty-free license to use them. Systems believes this agreement gave it a license to use future products invented by Stephens, and had no affect on Developments' ownership of the 828 and 448 patents. The Agreement also placed Stephens on Systems' board, promised a salary, and gave him 1.3 million membership units. Stephens later set up an entity called T.G. Stephens Capital ("TGS Capital"), which acted as a holding company for his

membership interest in Systems.  Stephens worked for Systems and served on its board for the first several months after the execution of the Purchase and Sale Agreement.

In December 2009, Systems' Board was seeking additional capital and drafted a Confidential Information Memorandum ("CIM") to distribute to potential investors.  The CIM made multiple statements regarding the history, structure, patents, and pending contracts of Systems and its subsidiaries.  Later that month, Systems undertook a major project installing a prototype wind turbine at the ranch of movie director James Cameron.  While Stephens and Else were working on this project, Stephens objected to the terms of the CIM on which he had sought clarification, but did not state his concerns.  Stephens claimed he was the sole owner of the 828 and 448 patents because of the Employment Agreement.  He further claimed he had sold the patents to Etcetera, a holding company owned by TGS Capital and Stephens' attorney on appeal, Johannessen.  In early 2010, Systems filed for bankruptcy.

Systems filed the underlying lawsuit in February 2010, seeking declaratory judgment that Developments, not Stephens or TGS Capital, is the owner of the patents, and that because Stephens did not own the patents, he had no intellectual property that could have been assigned to Etcetera.  The district court's declaratory judgment began by noting that Developments, the fully-owned subsidiary of Systems, has full right and title to various pieces of intellectual property.[1]  The main dispute was the ownership of the 828 and 448

---

[1] "BroadStar Developments, LP, a fully-owned subsidiary of Plaintiff BroadStar Wind Systems Group LLC, has full right, title, and interest to the following intellectual property: "Wind Driven Power Turbine" (U.S. Patent Appl. No. 61/031,317); "Wind Driven Power Turbine and Applications of Same" (U.S. Patent Appl. No. 61/057,856); "Wind Driven Power Generator With Moveable Cam" (U.S. Patent Appl. No. 12/110,100); "Mobile Wind Turbine" (U.S. Patent Appl. No. 61/100,479); "Fluid Turbine Optimized for Power Generation" (in preparation); "Hydraulic Cam" (in preparation); and "Water Turbine" (in preparation)."

No. 11-10025

patents which both parties agree were owned by Developments before March 2009.

The district court reviewed Stephens' four arguments that he owned the patents in September of 2009 when he transferred them to Etcetera. First, he claimed that the Employment Agreement from March 2009 made him the owner of the patents. Second, he alleged that when the charter of Developments lapsed for a period of time, the patents reverted to him. Third, he posited because Developments was the last recorded owner of the patents with the Trademark Office, Systems cannot claim ownership. Finally, he argued Etcetera was a bona fide purchaser of the patents. The district court carefully reviewed each of these claims and found Developments was and remains the rightful owner of the patents.

Stephens timely appealed. On appeal, he does not contest the findings of the district court, but instead raises four alleged errors: (1) Systems' lack of standing to adjudicate patent ownership claims; (2) the district court's decision to continue with the case without leave from the automatic bankruptcy stay; (3) the necessary and indispensable nature of Etcetera to any dispute on ownership of the patents; and (4) the district court's decision to join Developments as a plaintiff after the bench trial.

In a motion carried with the case, Stephens asks us to take judicial notice of BroadStar's bankruptcy court records and facts within those records which Stephens asserts indicate that BroadStar claimed no ownership in the patents in question. As the issues before this court do not hinge on whether Developments actually owns the patents in question, but rather on whether the courts below followed proper procedure, we fail to see how our analysis would be aided by consideration of the bankruptcy court records. Stephens' motion is, therefore, denied.

No. 11-10025

## STANDARDS OF REVIEW

We review findings of fact at bench trials for clear error and findings of law *de novo*. *Ag Acceptance Corp. v. Veigel*, 564 F.3d 695, 698 (5th Cir. 2009). A factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* This court further reviews a district court's decision to exercise declaratory judgment jurisdiction for abuse of discretion. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). Finally, this court reviews joinder of parties for abuse of discretion. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010).

## DISCUSSION

1.    Standing of BroadStar Systems

Stephens claims that Systems does not own the patents in question and thus had no standing to seek declaratory judgment. He considers this case a "patent action" where standing is limited to parties with a clear ownership stake in the patent. He cites numerous Federal Circuit opinions which stand for the proposition that a party must own the rights to a patent for standing in a patent dispute.[2] Systems correctly points out that this is not a patent action, but rather a simple contract dispute.

---

[2] Stephens cites *Israel Bio-Engineering Project v. Amgen*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007), for the proposition that challenges to standing in patent actions require a showing by the plaintiff that he holds legal title to the patent. However, this standard is not for contract disputes over the ownership of an otherwise valid patent, but for patent disputes such as infringement. In fact, the district court noted that Stephens mis-quoted Federal Circuit precedent to mask its patent infringement application. "In his brief, Defendant cites *Schreiber Foods, Inc. v. Beatrice Foods, Inc.*, quoting the portion of its holding that states that 'if the original plaintiff lacks Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing.' 402 F.3d 1198, 1203 (Fed. Cir. 2005). However, Defendant leaves out the first part of the sentence, which applies this holding to 'the area of patent infringement.'" *Id.*

6

No. 11-10025

Constitutional standing has three elements: (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing to seek declaratory judgment is subject to these same requirements. *Bennett v. Spear*, 520 U.S. 154, 162 (1997) ("To satisfy the 'case' or 'controversy' requirement of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision."). We have held that claims for declaratory relief may be brought by parties to or third-party beneficiaries of the contract. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2000). Thus, the standing question hinges on whether Systems and Developments are parties to the contract, not whether either of them hold title to the patent.

There is no dispute Stephens, Developments, and Systems entered into contracts with one another. In fact, in the absence of any contracts, Stephens would be unable to claim that the Employment Agreement somehow transferred to him the rights to the patents. Stephens argued his ownership of the patents resulted from the Employment Agreement he signed in March 2009 thus admitting a contract exists. The only question before the district court was whether Stephens or Developments had ownership of the two patents based on the March 2009 contracts. This controversy is factual in nature and does not alter the standing analysis. Thus, Systems and Developments, as parties to the March 2009 agreements, had standing to seek a declaratory judgment before the district court.

2.     Automatic Bankruptcy Stay

No. 11-10025

Stephens next contends the district court erred in adjudicating the declaratory judgment rather than staying all proceedings while the bankruptcy automatic stay was in place. He admits Systems was granted relief from the stay, but alleges that Developments did not receive relief because it was not a named plaintiff at the time the relief was granted. As such, Stephens claims the district court should not have ruled on the declaratory judgment. Systems argues that Developments was a party to the relief from the bankruptcy stay and thus the district court did not violate the automatic bankruptcy stay.

Bankruptcy law requires an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). If the action is against the debtor, or involves counterclaims against the debtor, the automatic stay will apply. *See Halmar Robicon Grp., Inc. v. Toshiba Int'l Corp.*, 127 F. App'x 501, 503 (Fed Cir. 2005). A party may, however, be granted relief from the automatic stay in order to continue litigation. 11 U.S.C. § 362(d). If a court decides a case without addressing the automatic stay, we have held that such actions are not void, but voidable because the bankruptcy court can retroactively lift the automatic stay. *Chapman v. Bituminous Ins. Co.*, 345 F.3d 338, 344 (5th Cir. 2003).

The bankruptcy court granted two different motions to modify the automatic bankruptcy stays and permit the declaratory judgment litigation. In those orders, the bankruptcy court granted relief from the stay to Systems, the "BroadStar Debtors," and Systems' "related entities" collectively. In light of the relief granted by the bankruptcy court, the district court did not abuse its discretion in permitting the declaratory judgment action to proceed.

3.　　Necessary Parties

Etcetera was not a named defendant in Systems' declaratory judgment suit. Stephens argues Etcetera was a necessary and indispensable party to the

No. 11-10025

litigation and that the district court should have dismissed the case for Systems' failure to join Etcetera.  Systems  argues that the motion was waived for untimely filing, Etcetera was not necessary to determine whether Systems or Stephens was the rightful owner of the patent under the various contracts, and there is no error because Etcetera could have sought to intervene in the suit but chose not to.

Federal Rule of Civil Procedure 19, requires joinder of a party that will not deprive the court of subject matter jurisdiction if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  If joinder is not feasible, the court may dismiss the case. *See* Fed. R. Civ. P. 19(b).  We have held:

> Rule 19's emphasis on a careful examination of the facts means that a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be. Consequently, district court's decision to dismiss for failure to join an indispensable party is properly reviewed under an abuse-of-discretion standard.

*Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986); *see also Hood v. City of Memphis*, 570 F.3d 625 (5th Cir. 2009).  Thus, we must determine whether the district court abused its discretion by not dismissing the declaratory judgment action.

No one claims Etcetera was a party to the contracts in question.  However, Stephens claims that patent owners are necessary and indispensable to any action involving that patent.  Much like his standing arguments, the authority

9

No. 11-10025

he cites is from the patent infringement context and does not apply to declaratory judgments. Because the declaratory judgment was based only on the contract dispute between Stephens, Systems, and Developments, Etcetera was not a necessary party to the dispute. While Etcetera certainly had interests in the outcome of the suit, as a non-party to the contract which was the sole basis for the declaratory judgment suit, Etcetera was neither necessary nor indispensable and thus we affirm the district court's refusal to dismiss for lack of a necessary party.

   4.  Joinder of BroadStar Developments

   After the bench trial, but before the opinion was issued, the district court sought briefing and decided to join Developments as an additional plaintiff. Stephens contends that Developments should not have been joined as a plaintiff to the case. Systems contends the district court did not abuse its discretion by joining Developments as a co-plaintiff under Rule 21.

   Because Rule 21 provides no guidance on whether a party may be joined, this court has looked to Rule 20's standards which permit joinder if a party:

> (A)[] assert[s] any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20. We have said:

> Courts have described Rule 20 as creating a two-prong test, allowing joinder of plaintiffs when (1) their claims arise out of the "same transaction, occurrence, or series of transactions or occurrences" and when (2) there is at least one common question of law or fact linking all claims.

*Acevedo*, 600 F.3d at 521. Further, "[b]oth Rule 19(a) and Rule 21 'provide wide discretion for the District Court to order joinder of parties . . .'" *EEOC v. Brown & Root*, 688 F.2d 338, 341 (5th Cir. 1982). We must determine whether the

10

rights Systems and Developments assert arise from the same transaction and involve common legal and factual questions or whether the district court abused its discretion by permitting joinder of Developments as a co-plaintiff.

Systems and Developments were parties to the contract with Stephens and that contract's language will control the disposition of the declaratory judgment lawsuit. Thus, both potential plaintiffs have claims arising out of the same transaction and share a common question of fact. The district court's order granting joinder to Developments assessed the concerns of jurisdiction and prejudice and exercised its wide discretion to join parties. All parties knew Develpments was a party to the contract at issue. Thus, there should have been no surprise that a party to a contract might be joined in litigation focused solely on that contract. We affirm the ruling of the district court because the joinder of a party to the contract whose role was discussed throughout the litigation was not an abuse of discretion.

## CONCLUSION

Because the district court did not abuse its discretion or erroneously apply the law, we AFFIRM the district court's declaratory judgment.