# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 12, 2018

No. 16-31052

Lyle W. Cayce
Clerk

WILLIE BANKS, Father and Next friend of Minor Children W.B. and J.B.;
MAMIE L. DAVIS, Mother and next friend of minor children J.D., S.D. and
G.D.; RAYMOND JOSEPH, SR., Father and next friend of minor E.J.;
ALEXANDER JACKSON, Father and next friend of minors B.J. and B.J.,

   Plaintiffs - Appellants

v.

ST. JAMES PARISH SCHOOL BOARD,

   Defendant - Appellant

v.

GREATER GRACE CHARTER ACADEMY, INCORPORATED,

   Intervenor - Appellee

Appeals from the United States United States District Court
For the Eastern District of Louisiana
USDC No. 2:65-CV-16173

No. 16-31052

Before STEWART, Chief Judge, and JOLLY and WIENER, Circuit Judges.

PER CURIAM:*

In 1965, a group of students and parents ("the plaintiffs") sued the St. James Parish School Board ("the Board") to compel the Board to desegregate its schools. The district court granted relief to the 1965 parties and, in 1967, entered an injunction ordering desegregation. This desegregation order is still in effect, and, indeed, it is from that 1967 order that this appeal arises.

Fast forward to 2016, more than half a century after the underlying case commenced. Greater Grace Charter Academy, Inc. ("Greater Grace"), a nonprofit corporation, applied with the Louisiana Board of Elementary and Secondary Education ("BESE") to open a Type 2 charter school. BESE and the Louisiana Department of Education ("LDOE") granted Greater Grace's request, subject to the condition that Greater Grace must "obtain[] approval from the federal court" before it could open, "because St. James Parish is under a desegregation order." So Greater Grace moved under Federal Rule of Civil Procedure 24 to intervene in the 1965 lawsuit to obtain the district court's approval to operate its charter school in St. James Parish. There was no objection to the intervention and it was allowed.

The Board and the plaintiffs (collectively, "the 1965 parties"), however, opposed Greater Grace's efforts to obtain approval from the district court to open the school. The 1965 parties argued that if Greater Grace is to operate in St. James Parish, it must comply with the desegregation order to the same extent as any school operating in the parish. The district court, nevertheless,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

granted Greater Grace's request to open the school. The 1965 parties now appeal, arguing that the district court erred in approving Greater Grace's operation of a charter school in St. James Parish.

We do not reach the merits of this alleged error because, as we discuss below, Greater Grace's procedural posture must be further analyzed by the district court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Before examining the legal issues presented, we turn to a more detailed explanation of the facts underlying this appeal. In 2016, after many failed attempts to become a Type 1 charter school (requiring the Board's approval), Greater Grace applied to BESE to become a Type 2 charter school (independent of the Board).[1] BESE approved that application, authorizing Greater Grace as a Type 2 charter school, but on certain conditions. Relevant here is the condition that Greater Grace must "obtain[] approval from the federal court" before it could open "because St. James Parish is under a desegregation order" that was originally entered in 1967. This approval was requested because LDOE interpreted La. Stat. Ann. § 17:3991(C)(3)—which provides that charter schools shall "[b]e subject to any court-ordered desegregation plan in effect for the city or parish school system"—to require Greater Grace to receive such court approval. LDOE advised Greater Grace that because Greater Grace "ha[d] not yet secured federal judicial approval to open pursuant to the active desegregation order in St. James Parish, BESE [could not] execute a contract and [] [LDOE could not] provide funding for the operation of Greater Grace . . . until this court approval [was] obtained."

---

[1] Type 1 charter schools are created by a charter between nonprofit corporations and local school boards while Type 2 charter schools are created through a charter between a nonprofit corporation and the BESE, rather than a local school board. La. Stat. Ann. § 17:3973(2)(b)(i)–(ii) (1997).

No. 16-31052

So, as a procedural means of obtaining this approval, Greater Grace moved, without opposition, to intervene in the 1965 case under Rule 24, "solely for the purpose of petitioning the Court for permission to open and operate its public charter school in St. James Parish." The district court granted the unopposed motion to intervene. Greater Grace then moved for a scheduling conference. The district court denied that motion. A few weeks before the school was set to open, Greater Grace filed a "Motion for Authority to Operate a Charter School in St. James Parish," arguing that the district court had the authority to approve the school, and promising that Greater Grace would comply with all of the statutory non-discrimination requirements, along with the various factors established by the Supreme Court for school districts to achieve unitary status.[2] Two days before the planned school opening, Greater Grace filed an emergency motion for expedited consideration, seeking a prompt ruling in order to receive state funding in time for the school to open that year.

The next day, before the 1965 parties had filed a response, the district court granted Greater Grace's motion for authority to operate a charter school, subject to the conditions proposed by Greater Grace in that motion. Later that day, the 1965 parties filed their respective responses, arguing that Greater Grace was subject to the desegregation order by virtue of La. Rev. Stat. § 17:3991(C)(3) (1997) and that Greater Grace's operation would not be consonant with the desegregation order because it would further entrench segregation in St. James Parish.[3] Importantly, the Board acknowledged that it had "no control whatsoever" over Greater Grace's operations, but it argued

---

[2] "Unitary status" means that "a school district [] has completely remedied all vestiges of past discrimination." *Bd. of Educ. of Oklahoma City Pub. Sch., Indep. Sch. Dist. No. 89 v. Dowell*, 498 U.S. 237, 245 (1991).

[3] The United States, which is a party to this litigation but not participating in this appeal, also filed a response opposing Greater Grace's motion to operate the charter school.

4

that if Greater Grace were to operate, it "should have the same obligations to desegregate its student body as are imposed on the Board."

After the responses had been filed, the district court issued a five-page order explaining its reasons for granting Greater Grace's motion for authority to operate. The court said that it granted the motion because (1) failure to open the school would deprive students of attending the school of their choice, (2) Greater Grace undertook efforts to attract a diverse student body and no student was turned away, (3) the district is primarily African American and still contains other schools that are over 90% African American after 50 years of being under the desegregation order, and (4) Greater Grace agreed to continue attracting diverse students. The court also suggested that the parties should bring Greater Grace into additional desegregation discussions. As far as the record before us indicates, Greater Grace has been operating since August 2016.

The 1965 parties now appeal the district court's order, arguing that the district court did not, in its brief opinion, thoroughly consider all of the relevant facts, and that the court abused its discretion by allowing Greater Grace to operate. In their briefs before us, the 1965 parties reassert their arguments made below, contending that the district court erred by allowing Greater Grace to operate. They argue that a Louisiana statute—La. Rev. Stat. § 17:3991(C)(3)—placed Greater Grace under the district court's 1967 desegregation order, and that allowing Greater Grace to operate would violate that order by enhancing segregation in St. James Parish.[4] Greater Grace, on the other hand, contends that applying § 17:3991(C)(3) to it is inappropriate

---

[4] Section 17:3991(C)(3) provides that a charter school shall "[b]e subject to any court-ordered desegregation plan in effect for the city or parish school system." To this contention—that a state, through its statutes, can determine who is or who is not bound to respect a federal injunction—we need not respond in this opinion.

because it is completely independent from the Board and its authority. Moreover, Greater Grace argues that it has no history of racial discrimination, justifying an injunction.

In the meantime, our focus was drawn away from these arguments and directed to the procedural posture of this case. While this appeal was pending, the Supreme Court decided *Town of Chester, New York v. Laroe Estates, Inc.*, in which the Court held that Article III's standing requirements apply to intervenors as of right under Rule 24 who seek "relief that is different from that which is sought by a party with standing." 137 S. Ct. 1645, 1651 (2017). In the light of that decision, we asked the parties to address the issue of standing and the relevance of *Town of Chester* to this appeal.

In its supplemental briefing, Greater Grace acknowledged that its intervention creates no legally cognizable dispute with the 1965 parties, to wit, Greater Grace has suffered no injury caused by these parties, nor does it seek any relief from them. It has no complaint against the 1965 parties, nor does Greater Grace seek to change the conduct of these parties in any way. Consequently, Greater Grace asserts that its seeking approval to operate does not satisfy Article III's standing requirements that there be a justiciable controversy between it and the 1965 parties. On the other hand, the 1965 parties argued that the district court had jurisdiction to hear the motion to operate a charter school based upon the court's authority to protect its desegregation order from interference by Greater Grace—as courts may do, for example, in the so-called "splinter district" cases, in which new school districts are formed within the established district. *See Augustus v. Sch. Bd. of Escambia Cty., Fla.*, 507 F.2d 152, 156 (5th Cir. 1975) (saying that, in desegregation cases, "[a] court has inherent power to enter such ancillary orders as are necessary to carry out the purpose of its lawful authority"); *see also Wright v. Council of City of Emporia*, 407 U.S. 451, 470 (1972). The 1965

parties are absolutely correct that the district court has the general authority, in a proper case, to assert its jurisdiction to protect its desegregation order. That point alone, however, does not address whether Greater Grace, as an intervenor, has a case or controversy with the 1965 parties.

The issue of Greater Grace's standing and their necessary or indispensable party status was not presented to the district court. The parties also did not address before the district court the import of the supervening Supreme Court case, *Town of Chester*. Moreover, the United States has a stake in this case and did not have the opportunity to address Greater Grace's procedural posture. Therefore, a more comprehensive review of these issues in the district court is imperative.

## II.   ANALYSIS

It is undisputed that St. James Parish has not yet reached complete unitary status.[5] It is also undisputed that La. Stat. Ann. § 17:3991(C)(3) demands that Greater Grace is compliant with the 1967 desegregation order. Therefore, Greater Grace was required to present itself before the court so that the court could exercise its duty to enforce the desegregation order. "[T]he State has, by statute, required charter schools to comply with standing desegregation orders in the parishes where they wish to operate. Thus, the State invited the Court into the charter school process for the specific purpose of considering its effects on desegregation." *Cleveland v. Union Par. Sch. Bd.*, 570 F. Supp. 2d 858, 868 (W. D. La. 2008). The district court's role is limited to determining whether the operation of the charter school would undermine the desegregation order. *Id.* at 867; *see also Smith v. Concordia Par. Sch. Bd.*, No.

---

[5] While this appeal was pending, the Board was declared unitary in the area of extracurricular activities and the court entered a judgment vacating and lifting all previous injunctions and orders with respect to extracurricular activities and transportation obligations (which was declared unitary at an earlier date). *Banks v. St. James Par. Sch. Bd.*, No. CV 65-16173, (E.D. La. July 17, 2017), ECF No. 132.

65-CV-11577, 2017 WL 2508197, at *3 (W.D. La. June 8, 2017) (citing *Augustus*, 507 F.2d at 156).

Charter schools have intervened in the ongoing school desegregation cases in the city or parish where they seek to be located pursuant to the mandate of La. Stat. Ann. 17:3991(C)(3). *See Cleveland*, 570 F. Supp. 2d 858, 866–67 (holding that a charter school properly sought to intervene in the ongoing school desegregation case); Tangipahoa Charter School Association First Motion to Intervene, *Moore v. Tangipahoa Par. Sch. Bd.*, No. CV 65-15556, (E.D. La. Feb. 10, 2015), ECF No. 1235. However, the text of the statute does not explicitly state that a charter school *must* intervene in a desegregation case. *See, e.g., Cleveland*, 570 F. Supp. 2d at 867 n.21 ("The Court notes that it appreciates the efforts of [D'Arbonne Woods Charter School] and its counsel to comply with both the requirements of state law and, in its view, of federal desegregation law by seeking review prior to opening its doors.").

As mentioned, an important issue that was not presented before the district court was whether Greater Grace is a necessary or indispensable party under Fed. R. Civ. P. 19. Within Rule 19, there are two main considerations if a third party is absent from the litigation and their joinder is sought: prejudice to the initial parties (*see* Fed. R. Civ. P. 19(a)(1)(A)), and prejudice to the interest of the proposed party to be joined (*see* Fed. R. Civ. P. 19(a)(1)(B)(i)).[6] A court can sua sponte determine that a required party is missing, and it can add that party to the case under Fed. R. Civ. P. 21. *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) ("A court with proper jurisdiction may also

---

[6] "If the absent party is a necessary party, but its joinder is not feasible [because it would defeat the court's diversity jurisdiction], the court must decide whether the absent party is an "indispensable" party to the action under Rule 19(b). *See* Fed. R. Civ. P. 19(b)." *Core Construction Services, LLC v. U.S. Specialty Insurance Company*, No. 16-13447, 2017 WL 1037444, *1–2 (E.D. La. Mar. 17, 2017).

consider sua sponte the absence of a required person and dismiss for failure to join.").

Plaintiffs assert that there is not a significant distinction between joinder as a necessary party and intervention of right, citing *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 823–25 (5th Cir. 1967). The *Atlantis* appeal considered whether the district court erred in declining to permit Atlantis to intervene in the case. *Id.* at 822. This court stated Rule 19(a)(2)(i) has nearly identical language to Rule 24(a)(2), which addresses intervention as of right, and shares a similar objective of ensuring the litigation includes the affected parties. *See id.* at 823–25 (recognizing the similar phrasing and underlying purposes of the two rules). With that perspective, this court first analyzed whether Atlantis was a necessary party to determine whether it could intervene. *Id.* "[T]he question of whether an intervention as a matter of right exists often turns on the unstated question of whether joinder of the intervenor was called for under Rule 19." *Id.* at 825. Because the court found that the party should have been joined as a defendant under Rule 19 (a)(2)(i),[7] the party was entitled to intervene as of right. *Id.*

However, *Town of Chester* has emphasized a substantial difference between joinder and intervention. Intervention as of right under Rule 24 and pursuant to *Chester* requires a showing of independent Article III standing, whereas there is no standing analysis for joinder. 137 S. Ct. at 1650–51. Therefore, reading *Atlantis* and *Chester* together, there is a distinction between joinder and intervention.

"[The] issue[] [of whether Greater Grace should be joined as a necessary or indispensable party has] not been previously [presented to the district court] by the [parties]. [It is] more appropriately presented to the district court, which

---

[7] This rule is now stated as Fed. R. Civ. P. 19(a)(1)(B)(i).

may fully consider them for the first time." *Howard v. Fortenberry*, 728 F.2d 712, 713–14 (5th Cir. 1984); *see also Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) ("Rule 19's emphasis on a careful examination of the facts means that a district court will ordinarily be in a better position to make a Rule 19 decision than a circuit court would be."); *BroadStar Wind Sys. Grp. Liab. Co. v. Stephens*, 459 F. App'x 351, 358 (5th Cir. 2012) (per curiam) (unpublished) ("[b]oth Rule 19(a) and Rule 21 provide wide discretion for the District Court to order joinder of parties. . .") (quoting *EEOC v. Brown & Root,* 688 F.2d 338, 341 (5th Cir. 1982)) (internal quotations omitted); *Pimentel*, 553 U.S. at 861.

The court reviews a district court's determination as to whether a party is a necessary or indispensable party under an abuse-of-discretion standard. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010) ("Rulings on the joinder of parties are reviewed for abuse of discretion.") Therefore, it is appropriate to have a more robust record to determine whether the district court abused its discretion.

Because of the lack of a comprehensive record regarding whether Greater Grace is a necessary or indispensable party, we posit that remand is appropriate. *See Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 306 (4th Cir. 1992) ("We do not require dismissal, however, but remand the case so that the district court may develop the record and determine in the first instance whether Cranch indeed must be joined."); *see also Bakia v. Los Angeles Cty. of State of Cal.*, 687 F.2d 299, 302 (9th Cir. 1982) ("This court can best review an alleged abuse of discretion when the record, supported by findings and reasoning, shows that discretion has indeed been exercised. On this record, the decision of the district court cannot adequately be reviewed."); *Francis Oil & Gas, Inc. v. Exxon Corp.*, 661 F.2d 873, 880 (10th Cir. 1981) ("In our view then the cause must be remanded for the purpose of having a trial, or

hearing, one which seeks to ascertain some of the factual matters which have not been determined.").

## III.    CONCLUSION

For the reasons stated above, we REMAND this case to the district court with instructions to determine whether Greater Grace is a necessary and/or indispensable party. Additionally, to the extent that the district court does not find that Greater Grace is a necessary and/or indispensable party, then the district court is instructed to determine whether Greater Grace has standing given the United States Supreme Court's holding in *Town of Chester*. The district court is not precluded from conducting any further proceedings that it finds necessary.

No. 16-31052

E. Grady Jolly, Circuit Judge, partially concurring:

I agree to remand this case for further proceedings below. I respectfully disagree with the majority's suggestion that the district court must determine whether Greater Grace is a necessary or indispensable party, joined under Federal Rule of Civil Procedure 19, or an intervenor as of right under Rule 24. The record before us is unequivocal that Greater Grace entered this case as an intervenor. No one has ever attempted to join Greater Grace as a party.

As recounted by the majority opinion, this action began in 1965 when the plaintiffs sued the Board to compel desegregation of its schools. An injunction entered in 1967 ordering desegregation remains partly in effect. Greater Grace involved itself in this decades-old action in 2016 when it filed an Unopposed Motion to Intervene. In that motion, Greater Grace explicitly, and only, invoked Rule 24 as the basis for inserting itself in this litigation. No party argued below that Greater Grace should be joined as a necessary or indispensable party under Rule 19.[1] Joinder, respectfully, is a diversionary tactic in an attempt to avoid the difficult issue of standing.

Nevertheless, the majority's first error leads to a second, more fundamental problem: the suggestion by the majority that no standing analysis is required for joinder. In *Town of Chester v. Laroe Estates, Inc.*, the Supreme Court was clear that "[f]or all relief sought, there must be a litigant with standing." 137 S.Ct. 1645, 1651 (2017). Greater Grace seeks relief in this case—approval to operate a charter school—that has no relationship to the relief sought by the 1965 plaintiffs, that is, the dismantling of de jure segregation. *See id.* ("[A]n intervenor of right must have Article III standing

---

[1] The majority cites *Howard v. Fortenberry,* for the proposition that the unaddressed issue of joinder should be remanded to the district court. 728 F.2d 712 (5th Cir. 1984). That case is inapposite because the remanded issue was raised below but not addressed by the district court. *Id.* at 713–14.

in order to pursue relief that is different from that which is sought by a party with standing."). Even if Greater Grace were to be joined as a third-party defendant, it cannot seek relief without first establishing standing. *See* 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531 (3d ed. 2018) ("If a defendant makes a claim, as for example by counterclaim, crossclaim, or third–party claim, standing is likely to be measured by the same tests as apply to plaintiff claimants."). In short, this case should be remanded to allow the district court to consider whether Greater Grace has Article III standing in the light of *Town of Chester*; or, stated differently, to decide whether Greater Grace has a justiciable controversy with the 1965 parties.