# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FERNANDO CWILICH GIL, individually and on behalf of RUSE LABORATORIES CORP., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 2022-0173-BWD |
| BENJAMIN PAUL GLEITZMAN, REPLICANT SOLUTIONS, INC., | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| RUSE LABORATORIES CORP., | ) ) | |
| Nominal Defendant. | ) ) | |

## FINAL REPORT

Final Report: March 4, 2024
Date Submitted: February 2, 2024

Andrew S. Dupre, Brian R. Lemon, and Stephanie H. Dallaire, MCCARTER & ENGLISH, LLP, Wilmington, Delaware; *Attorneys for Plaintiff Fernando Cwilich Gil and Nominal Defendant Ruse Laboratories Corp.*

Michael A. Weidinger and Megan Ix Brison, PINCKNEY, WEIDINGER, URBAN & JOYCE, LLC, Wilmington, Delaware; OF COUNSEL: Elizabeth Sandza, SANDZA LAW, PLLC, Washington, D.C.; *Attorneys for Defendant Benjamin Paul Gleitzman*.

Elena C. Norman, Daniel M. Baker, and Alex B. Haims, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Ben Au, ORRICK, HERRINGTON & SUTCLIFFE LLP, Santa Monica, California; Ariel Winawer, ORRICK, HERRINGTON & SUTCLIFFE LLP, San Francisco, California; Sarah Shyy, ORRICK, HERRINGTON & SUTCLIFFE LLP, Irvine, California; *Attorneys for Defendant Replicant Solutions, Inc.*

**DAVID, M.**

Plaintiff Fernando Cwilich Gil ("Plaintiff") and defendant Benjamin Gleitzman are the co-founders and sole directors, officers, and stockholders of nominal defendant Ruse Laboratories Corp. ("Ruse" or the "Company"). In February 2022, Plaintiff initiated this action, asserting claims against Gleitzman for breach of fiduciary duty; seeking a declaration that a certificate of dissolution filed on behalf of Ruse is void or invalid; and requesting the appointment of a receiver for the Company.

In June 2023, Plaintiff filed a second amended complaint. The amended pleading adds a claim against Gleitzman for breach of an assignment agreement under which Gleitzman assigned his rights in "Company Inventions" to Ruse; a claim against a new defendant, Replicant Solutions, Inc. ("Replicant"), for tortious interference with that assignment agreement; and a request for declaratory relief arising from those claims.

This final report resolves Gleitzman and Replicant's ("Defendants") motions to dismiss those newly added claims as time-barred under the applicable statutes of limitations. For the reasons explained below, I recommend that the Court dismiss the tortious interference claim and otherwise deny the motions to dismiss.

1

## I.    BACKGROUND[1]

### A.    Plaintiff and Gleitzman Assign Their Rights In Company Inventions To Ruse.

In 2014, Plaintiff Fernando Cwilich Gil and defendant Benjamin Paul Gleitzman co-founded Ruse, a Delaware corporation, "to develop various technology-based projects." SAC ¶ 13. Plaintiff, "an artist and creative director working with technology," and Gleitzman, "a software engineer and manager," are each fifty percent stockholders of Ruse. *Id*. ¶¶ 15-16. Plaintiff serves as Ruse's CEO and President, and Gleitzman serves as Ruse's Secretary. *Id*. ¶¶ 1, 26-27.

On April 6, 2014, Plaintiff and Gleitzman each executed a Confidential Information and Invention Assignment Agreement (the "Assignment Agreement") in which they agreed that, while employed by the Company, they would disclose and assign all rights in any patents to Ruse:

> Assignment of Company Inventions. I agree that I will ***promptly make full written disclosure to the Company***, will hold in trust for the sole right and benefit of the Company, and hereby ***assign to the Company***, or its designee, all my right, title and interest throughout the world in

---

[1] The following facts are taken from the Corrected Verified Second Amended Complaint (the "Second Amended Complaint") and the documents incorporated by reference therein. Corrected Verified Second Am. Compl. [hereinafter, "SAC"], Dkt. 67. *See Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).

and to any and all Company Inventions[2] and all patent, copyright, trademark, trade secret and other intellectual property rights therein.

SAC, Ex. A [hereinafter, "Assign. Agt."] § 4(d) (emphasis added). The Assignment Agreement is governed by California law. *Id.* § 12(a).

## B. Gleitzman Invents Technology While Working For Atomic and Replicant.

The Complaint alleges that "in 2014 and 2015, Ruse did work for Atomic, a venture capital fund and technology incubator, and its CEO Jack Abraham." SAC ¶ 37. "In mid-2017, Gleitzman began exploring the possibility of Ruse again working with Atomic on an outgoing robocalling technology project." *Id.* ¶ 38. "After seeking and obtaining [Plaintiff]'s consent, Gleitzman and Ruse began

---

[2] The Assignment Agreement defines "Inventions" to include:

> discoveries, developments, concepts, designs, ideas, know how, improvements, inventions, trade secrets and/or original works of authorship, whether or not patentable, copyrightable or otherwise legally protectable[] [which] . . . includes, but is not limited to, any new product, machine, article of manufacture, biological material, method, procedure, process, technique, use, equipment, device, apparatus, system, compound, formulation, composition of matter, design or configuration of any kind, or any improvement thereon.

Assign. Agt. § 4(c). "Company Inventions" are defined to include "any and all Inventions that [Gil or Gleitzman, respectively,] may solely or jointly author, discover, develop, conceive, or reduce to practice during the period of the Relationship, except as otherwise provided in Section 4(g) below." *Id.* "Relationship" is defined as "[a]ny such employment or consulting relationship between the parties hereto, whether commenced prior to, upon or after the date of this Agreement . . . ." *Id.* § 1.

3

working on an Atomic company known as 'Replicant.'" *Id*. ¶ 39. According to the Complaint,

> Gleitzman was not able to exploit the opportunity in Replicant alone, but rather required the use of Ruse's resources, assets and frequent collaborators to help him develop Replicant's code, design, content, product and brand. Ruse's work for Atomic on Replicant was typical. [Plaintiff] focused mostly on the creative and product side, such as experimenting with how the technology could be used while refining its concept and design; Gleitzman worked primarily on code development and financial management. Gleitzman and [Plaintiff] also organized and recruited freelance coders to assist Gleitzman in code development for Replicant.

*Id*. ¶¶ 40-41. Plaintiff alleges that Ruse completed its work for Replicant without executing a contract with Atomic or Replicant, expecting that "Gleitzman would negotiate the best possible equity deal for Ruse." *Id*. ¶¶ 42-43. But instead, "Gleitzman secured a personal equity interest in Replicant in exchange for the work performed by Ruse and accepted a salaried position as [Replicant's] Chief Technical Officer." *Id*. ¶ 44.

In June and August 2017, Atomic filed with the United States Patent and Trademark Office ("USPTO") two provisional patent applications (the "Provisional Applications") based on technology developed in collaboration with Gleitzman (the "'038 Technology"). *See* SAC, Exs. C, D. Although Gleitzman developed the '038

4

Technology with Replicant, the Provisional Applications listed only Abraham as the inventor and Atomic as assignee. *Id.* ¶¶ 48-49; *see also id.*, Exs. C, D.[3]

On June 22, 2018, Atomic filed a non-provisional patent application (the "'453 Application") based on the Provisional Applications and the '038 Technology, again identifying only Abraham as the inventor. SAC ¶ 50; *see also id.*, Ex. E at 1.

Although the '453 Application did not include Gleitzman as an inventor, on February 27, 2020, Gleitzman and Replicant recorded an assignment agreement through which Gleitzman purported to assign his rights under the '453 Application to Replicant (the "Replicant Assignment Agreement"). SAC, Ex. G. Then, on March 5, 2020, Replicant filed a request with the USPTO to update the '453 Application (the "2020 Update"), seeking to "correct[] . . . the inventorship of the above referenced application to add inventor Benjamin Gleitzman" and "update the Applicant and Assignee information" to identify Replicant, instead of Atomic, as the applicant and assignee. SAC ¶ 51; *see also id.*, Ex. F at 1.

---

[3] On February 14, 2018, Plaintiff caused Ruse to enter into an Independent Contractor Agreement with Atomic (the "ICA"). SAC ¶ 58; *see also id.*, Ex. H. Under the ICA, Ruse agreed that, for one year, "work product . . . developed by [Ruse] in connection with [its] Services . . . shall . . . remain the sole and exclusive property of [Atomic]." SAC, Ex. H ¶ 7(b). The Complaint alleges that Plaintiff was "fraudulently induced" into executing the ICA "without disclosure that Gleitzman invented the technology underlying the '038 Patent . . . ." SAC ¶ 58.

On June 23, 2020, the USPTO issued Patent '038, based on the '038 Technology as reflected in the Provisional Applications and the '453 Application, to Replicant (the "'038 Patent"). SAC ¶ 52.

## C. Replicant Files And Then Abandons The '314 Application.

On June 24, 2020, Replicant filed another patent application (the "'314 Application"), listing six inventors, including Gleitzman. SAC, Ex. I; *see also id*. ¶¶ 59, 62. The '314 Application is not based on the '038 Technology, but other "technology that was invented, in part, by Ruse." SAC ¶¶ 60-61. According to the Complaint, "Replicant recently abandoned the '314 Application," "rob[bing] Ruse of its ability to protect exclusivity in the intellectual property identified in the '314 Application . . . ." *Id*. ¶ 64.

On November 10, 2020, Gleitzman filed a certificate of dissolution for Ruse. *Id*. ¶¶ 106-108.

## D. Procedural History

On February 22, 2022, Plaintiff initiated this action through the filing of a Verified Complaint for Breach of Fiduciary Duties (the "Initial Complaint"). Verified Compl. for Breach of Fiduciary Duties [hereinafter, "Initial Compl."], Dkt. 1. The Initial Complaint named only Gleitzman as a defendant and alleged six counts, asserted derivatively on behalf of Ruse:

- Count One sought a declaratory judgment that the dissolution of Ruse was void or invalid;

- Count Two alleged that Gleitzman breached his fiduciary duties by taking a salary and equity interest in Replicant that belonged to Ruse;

- Count Three alleged that Gleitzman was unjustly enriched by keeping the salary and equity interest for himself;

- Count Four alleged that Gleitzman breached his fiduciary duties by canceling potential contracts for Ruse;

- Count Five alleged that Gleitzman breached his fiduciary duties by shutting down Ruse; and

- Count Six sought the appointment of a trustee or custodian.

On March 14, 2022, Plaintiff filed a Verified Amended Complaint (the "First Amended Complaint"). Dkt. 16. On March 28, 2022, Gleitzman moved to dismiss the First Amended Complaint and filed an Answer and Counterclaims (the "Counterclaims"). Dkts. 20-21. On May 16, 2022, Plaintiff answered and moved to dismiss Count One of the Counterclaims. Dkts. 33-34. On September 26, 2020, Vice Chancellor Glasscock, to whom this action was assigned, denied the parties' motions to dismiss. Dkt. 57.

On June 22, 2023, with leave of Court, Plaintiff filed a Verified Second Amended Complaint (the "Second Amended Complaint").[4] Dkt. 63. The Second Amended Complaint adds Replicant as a defendant and alleges three new counts, asserted derivatively on behalf of Ruse:

- new Count Six seeks a declaratory judgment that Ruse is an assignee of the '038 Patent and an order of specific performance directing Defendants to take steps necessary to list Ruse as an assignee on the '038 Patent;

- Count Seven alleges that Gleitzman breached the Assignment Agreement by (1) failing to assign the '038 Patent to Ruse and (2) failing to disclose the '038 Patent and the '314 Patent Application to Ruse; and

- Count Eight alleges that Replicant tortiously interfered with the Assignment Agreement.

**E.    The Motions to Dismiss**

On July 24, 2023, Replicant and Gleitzman moved to dismiss Counts Six, Seven, and Eight of the Second Amended Complaint (the "Motions to Dismiss"). Dkts. 74, 77.[5] The Court heard oral argument on February 2, 2024. Dkt. 101.

---

[4] On July 10, 2023, Plaintiff filed a Corrected Verified Second Amended Complaint, which is the operative complaint. Dkt. 67.

[5] On August 23 and 24, 2023, Defendants filed opening briefs in support of the Motions to Dismiss. *See* Def. Replicant Solutions, Inc.'s Op. Br. In Supp. Of Mot. To Dismiss Pl.'s

## II.  ANALYSIS

### A.  Standard of Review

Defendants move to dismiss Counts Six (declaratory judgment), Seven (breach of the Assignment Agreement), and Eight (tortious interference with the Assignment Agreement) of the Second Amended Complaint as time-barred under the applicable statutes of limitations.

When reviewing a motion to dismiss under Court of Chancery Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim; [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ."  *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531,

---

Corrected Verified Second Am. Compl. [hereinafter, "ROB"], Dkt. 84; Def. Benjamin Gleitzman's Mot. To Dismiss Count Seven And Joinder In Replicant Solutions, Inc.'s Op. Br. In Supp. Of Its Mot. To Dismiss Count Six Of Pl.'s Corrected Verified Second Am. Compl. [hereinafter, "GOB"], Dkt. 86.  On October 6, 2023, Plaintiff filed a Combined Opposition to Defendants' Opening Briefs in Support of Motions to Dismiss Counts VI, VII, and VIII of Verified Second Amended Complaint.  Pl.'s Combined Opp'n To Defs.' Op. Brs. In Supp. Of Mots. To Dismiss Counts VI, VII, And VIII Of Verified Second Am. Compl. [hereinafter, "AB"], Dkt. 90.  On October 23, 2023, Replicant and Gleitzman filed reply briefs in further support of the Motions to Dismiss.  *See* Def. Replicant Solutions, Inc.'s Reply Br. In Supp. Of Mot. To Dismiss Pl.'s Corrected Verified Second Am. Compl. [hereinafter, "RRB"], Dkt. 95; Reply Br. In Supp. Of Def. Benjamin Gleitzman's Mot. To Dismiss Count Seven And Joinder In Replicant Solutions, Inc.'s Reply Br. In Supp. Of Its Mot. To Dismiss Count Six of Pl.'s Corrected Verified Second Am. Compl. [hereinafter, "GRB"], Dkt. 96.

This action was reassigned to me on August 8, 2023.  Dkt. 83.

535 (Del. 2011). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id*. at 537.

Dismissal under Rule 12(b)(6) is appropriate when it is clear from the face of the complaint that the claims are barred by the applicable statute of limitations. *See Pomeranz v. Museum P'rs, L.P.*, 2005 WL 217039, at *2 (Del. Ch. Jan. 24, 2005) ("When it is clear from the face of the [c]omplaint . . . that plaintiffs' tolling theories fail even to raise a legitimate doubt about the time the claims accrued, dismissal is appropriate if the claims were filed after the applicable limitations period expired." (alterations in original) (internal citation and quotation marks omitted)); *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *3 (Del. Ch. July 17, 1998) ("[I]t is well settled that where the complaint itself alleges facts that show that the complaint is filed too late, the matter may be raised by [a] motion to dismiss." (internal citation omitted), *aff'd*, 725 A.2d 441 (Del. 1999)).

"Statutes of limitations exist at law and serve to bar claims brought after the limitations period set forth in the statute has expired." *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974-75 (Del. Ch. 2016). "Statutes of limitations traditionally do not apply directly to actions in equity, although courts of equity may apply them by analogy in determining whether a plaintiff should be time-barred under the equitable doctrine of laches." *Id*. at 975.

Counts Seven (breach of the Assignment Agreement) and Eight (tortious interference with the Assignment Agreement) assert legal claims for which Plaintiff seeks both legal and equitable relief. Where a plaintiff brings a legal claim seeking legal relief in the Court of Chancery, the statute of limitations applies. *Id*. at 983.[6] Where a plaintiff brings a legal claim seeking equitable relief, the Court will apply the statute of limitations by analogy "with at least as much and perhaps more presumptive force given its quasi-legal status and will bar claims outside the limitations period absent tolling or extraordinary circumstances." *Id*. at 984. The parties here agree that resolution of the Motions to Dismiss turns on application of the applicable statutes of limitations and tolling doctrines.

**B.    The Motion To Dismiss Count Seven For Breach Of The Assignment Agreement Is Denied.**

In Count Seven, Plaintiff alleges that Gleitzman breached the Assignment Agreement by (1) purporting to assign his rights in the '038 Patent to Replicant instead of Ruse and (2) failing to promptly disclose his rights relating to the '038 Patent and the '314 Patent Application.

_____

[6] This Court has acknowledged that "extraordinary circumstances may provide an exception to the strict application of statutes of limitations for purely legal matters, separate and apart from the application of tolling doctrines," but the parties have not argued any such "extraordinary circumstances" exist in this case. *Kraft*, 145 A.3d at 983.

As explained below, the Court cannot conclude from the pleadings that claims premised on either theory of breach are time-barred.

### 1. Breach Of The Assignment Agreement For Failure to Assign

#### a. What Is The Presumptive Limitations Period?

Plaintiff's contract claims arise under California law. *See* Assign. Agt. § 12(a). "At common law, the law of the forum supplies the limitations period." *CHC Invs. LLC v. FirstSun Cap. Bancorp*, 2020 WL 1480857, at *4 (Del. Ch. Mar. 23, 2020), *aff'd*, 241 A.3d 221 (Del.). To prevent a plaintiff from shopping for a forum with the longest limitations period, however, Delaware has modified the common law by adopting a "Borrowing Statute," which provides:

> Where a cause of action arises outside of [Delaware], an action cannot be brought in a court of [Delaware] to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of [Delaware], or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 *Del. C.* § 8121. The Borrowing Statute minimizes forum shopping incentives "'by instructing a Delaware court to compare the limitations period that would apply under Delaware law and the law of the foreign jurisdiction[,]' and apply the shorter of the two." *CHC Invs.*, 2020 WL 1480857, at *4.

In *Saudi Basic Industry Corporation v. Mobil Tanbu Petrochemical Company*, the Delaware Supreme Court crafted an exception to the Borrowing Statute. 866 A.2d 1 (Del. 2005). The plaintiff in that case, a Saudi Arabian

corporation, filed a declaratory judgment action against its joint venture partners in Delaware Superior Court, and one of the defendants responded with counterclaims. The plaintiff moved to dismiss the counterclaims as time-barred, arguing that the Borrowing Statute required application of Delaware's three-year limitations period rather than Saudi Arabia's "eternal" limitations period. *Id*. at 14-16. The Superior Court denied the motion, and the Supreme Court affirmed, explaining that the Borrowing Statute does not apply where its application would "subvert[] the statute's fundamental purpose, by enabling [the plaintiff] to prevail on a limitations defense that would never have been available to it . . . in the jurisdiction where the cause of action arose." *Id*. at 17-18.

After *Saudi Basic*, there remains some "'uncertainty as to when [the] [B]orrowing [S]tatue applies,'" and "Delaware courts applying its holding have adopted different approaches resulting in inconsistent outcomes." *CHC Invs.*, 2020 WL 1480857, at *5 (footnote omitted) (quoting *TrustCo v. Mathews*, 2015 WL 295373, at *7 (Del. Ch. Jan. 22, 2015)). One approach interprets *Saudi Basic* as holding that the Borrowing Statute does not apply whenever the Delaware limitations period is shorter than the limitations period of the foreign jurisdiction where the claim arose. *See, e.g.*, *Bear Stearns Mortg. Funding Tr. 2006-SL1 v. EMC Mortg. LLC*, 2015 WL 139731, at *8 (Del. Ch. Jan. 12, 2015) (declining "to apply the Borrowing Statute when its operation would bar a claim that would be timely

under the law governing the claim"). A narrower approach "interprets *Saudi Basic* to hold that the plain language of the borrowing statute governs unless the party asserting the underlying claim was forced into a Delaware forum." *CHC Invs.*, 2020 WL 1480857, at *8 (adopting "a narrow interpretation of *Saudi Basic*" under which "the court first applies the plain language of [the] borrowing statute[]"; "[i]f Delaware's limitations period applies, the court next determines whether the party asserting the underlying claim was forced to file in Delaware[,]" and if so, "then the court applies the foreign limitations period").

The statute of limitations for a breach of contract claim is three years in Delaware, or four years in California. *See* 10 *Del. C.* § 8106(a); Cal. Civ. Proc. Code § 337(a). The parties' briefing did not identify *Saudi Basic*, or advocate for a broad or narrow reading of that authority under the facts alleged. Instead, the parties assume the Borrowing Statute applies and Delaware's shorter, three-year statute of limitations governs. As discussed below, the result is the same either way.

### b. When Did The Claim Accrue?

Count Seven alleges that Gleitzman breached the Assignment Agreement by failing to assign the '038 Patent to Ruse. Plaintiff contends that claim accrued on June 23, 2020, when the USPTO issued the '038 Patent. Gleitzman argues, instead, that the claim accrued on June 22, 2018, when Atomic filed the 453 Application

14

based on the '038 Technology, or, at the latest, on December 27, 2018, when the 453 Application was published. Plaintiff has the better argument.

A claim accrues on the date of the wrongful act. Under Delaware or California law,[7] "[f]or breach of contract claims, the wrongful act is the breach, and the cause of action accrues at the time of breach." *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A.3d 62, 77 (Del. Ch. 2013) (citation and internal quotation marks omitted); *see also Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 846 (Fed. Cir. 2009) ("'A contract cause of action does not accrue until the contract has been breached.'" (quoting *Spear v. California State Auto. Ass'n*, 831 P.2d 821 (Cal. 1992), *aff'd*, 563 U.S. 776 (2011))). "Breach is defined as a '[f]ailure, without legal excuse, to perform any promise which forms the whole or part of a contract.' To determine the accrual date,

---

[7] The limitations analysis is governed by whichever law applies under the Borrowing Statute. *See Bear Stearns*, 2015 WL 139731, at *12 ("Assuming that the Borrowing Statute called for applying Delaware's shorter statute of limitations period, then Delaware's rules about the operation of that shorter period, including when claims accrue, also applied."); *see also Frombach v. Gilbert Assocs., Inc.*, 236 A.2d 363, 366 (Del. 1967) ("[T]he borrowed statute [of limitations] is accepted with all its accoutrements . . . ."); *de Adler v. Upper N.Y. Inv. Co.*, 2013 WL 5874645, at *13 n.149 (Del. Ch. Oct. 31, 2013) (explaining that "'accoutrements,' such as claim accrual and tolling doctrines," are accepted with the borrowed statute of limitations); *Delargy v. Hartford Accident and Indemnity Co.*, 1986 WL 11562, at *2 (Del. Super. Oct. 8, 1986) (same). Again, the result here is the same under either Delaware or California law.

therefore, courts must examine the language of the contract." *Meso*, 62 A.3d at 77 (alteration in original) (internal citation and footnote omitted).

Here, Gleitzman promised in the Assignment Agreement to "assign to the Company . . . all [his] right, title and interest . . . in and to any and all Company Inventions and all patent . . . rights therein." Assign. Agt. § 4(d). He could not have breached his contractual obligation to assign the '038 Patent to Ruse before the patent was issued. *See Meso*, 62 A.3d at 78 (holding that a claim for breach of an anti-assignment provision in a global consent agreement did not accrue when the alleged breacher entered into a binding merger agreement, but when the assignment actually occurred at the merger closing); *see also Int'l Bus. Machs. Corp. v. Zachariades*, 70 F.3d 1278, 1995 WL 697210, at *2 (9th Cir. 1995) (TABLE) (holding that "the limitations period for failure to assign [a patent under an employment agreement] commenced on the date that [the assignee] first could have demanded assignment," *i.e.*, "the dates that the patents were issued"). Thus, the earliest date this claim could have accrued is June 23, 2020, when the '038 Patent was issued.

The authority on which Defendants rely does not support an earlier accrual date. In *Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, for instance, the United States Court of Appeals for the Federal Circuit concluded that, where a plaintiff had notice of claims arising from the issuance of

16

one patent, it also had notice of claims arising from "continuation patents" that were issued thereafter. 583 F.3d at 842. In so holding, the court rejected the plaintiff's position that its claims under the later-filed patents could not have accrued until those patents were issued. But, critically, "[i]n *Stanford*, the plaintiff had actual notice of the [first] issued patent, as well as of defendants' claim of ownership over related patents that 'may issue.'" *Regents of Univ. of Cal. v. Chen*, 2017 WL 3215356, at *6 (N.D. Cal. July 26, 2017) (distinguishing *Stanford*). Here, there is no allegation that Plaintiff's breach of contract claim accrued upon the issuance of a prior-issued patent, and *Stanford* is therefore inapposite.[8]

---

[8] Defendants cite numerous cases analyzing accrual of claims other than breach of contract claims—*see, e.g.*, *Miller v. Bechtel Corp.*, 663 P.2d 177 (Cal. 1983) (fraud); *Bernson v. Browning-Ferris Indus.*, 873 P.2d 613 (Cal. 1994) (defamation); *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005) (malpractice); *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) (misappropriation); *Cmty. Cause v. Boatwright*, 177 Cal. Rptr. 657 (Ct. App. 1981) (violation of a statute); *Nguyen v. W. Digital Corp.*, 177 Cal. Rptr. 3d 897 (Ct. App. 2014) (malpractice)—or analyzing accrual under the law of other jurisdictions. *See, e.g.*, *Ferris Mfg. Corp. v. Carr*, 2015 WL 279355 (N.D. Ill. Jan. 21, 2015); *Wise v. Hubbard*, 769 F.2d 1 (1st Cir. 1985); *BroadStar Wind Sys. Gp. Ltd. Liab. Co. v. Stephens*, 459 Fed. Appx. 351 (5th Cir. 2012); *Univ. Patents, Inc. v. Kligman*, 1991 WL 64652 (E.D. Pa. Apr. 22, 1991); *Fed. Express Corp. v. Accu-Sort Sys., Inc.*, 2005 WL 8156707 (W.D. Tenn. Mar. 30, 2005); *OrbusNeich Med. Co., Ltd., BVI v. Boston Sci. Corp.*, 694 F. Supp. 2d 106 (D. Mass. 2010) *WesternGeco v. Ion Geophysical Corp.*, 2009 WL 3497123 (S.D. Tex. Oct. 28, 2009); *Informatics Applications Gp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400 (E.D. Va. 2011); *MV Circuit Design, Inc. v. Omnicell, Inc.*, 2015 WL 1321743 (N.D. Ohio Mar. 24, 2015); *M & T Chems., Inc. v. Int'l Bus. Machs. Corp.*, 403 F. Supp. 1145 (S.D.N.Y. 1975), *aff'd*, 542 F.2d 1165 (2d Cir. 1976). That authority does not apply or control here.

Accordingly, Plaintiff's claim for breach of the Assignment Agreement premised on the failure to assign the '038 Patent accrued no earlier than June 23, 2020, when the '038 Patent was issued.[9]

### c. When Did The Statute Of Limitations Run?

Using June 23, 2020 as the earliest accrual date, Plaintiff was within the three- or four-year limitations period when he filed the Second Amended Complaint on June 22, 2023. Accordingly, I recommend that the Court deny the motion to dismiss Count Seven to the extent it asserts a claim for breach of the Assignment Agreement premised on Gleitzman's alleged failure to assign the '038 Patent.

### 2. Breach Of The Assignment Agreement For Failure to Disclose

### a. What Is The Presumptive Limitations Period?

Count Seven also alleges that Gleitzman breached the Assignment Agreement by failing to "promptly" disclose his rights relating to the '038 Patent and the '314 Patent Application. As with Plaintiff's other theory of breach, Plaintiff's breach of

---

[9] Defendants do not argue that the Replicant Assignment Agreement was a repudiation of the Assignment Agreement. Even if they did, I could not "find as a matter of undisputed fact that [Plaintiff] objectively manifested an intent to treat the repudiation as a breach" such that an earlier accrual date would apply. *Meso*, 62 A.3d at 79. Additionally, to the extent Gleitzman breached the Assignment Agreement by failing to assign some other right predating issuance of the patent (such as a right to the patent application), it is not clear from the Assignment Agreement when the duty to assign any such rights would have arisen, and additional fact development would be needed to identify an accrual date.

contract claims based on the failure to disclose are governed either by Delaware's three-year or California's four-year statute of limitations.

### b. When Did The Claims Accrue?

Plaintiff alleges that Gleitzman breached the Assignment Agreement by failing to promptly disclose his rights relating to the '038 Patent and the '314 Application to Ruse. For the '038 Patent, Plaintiff says the claim accrued on June 23, 2020, when the '038 Patent was issued. For the '314 Application, Plaintiff contends his claim arose on December 24, 2020, when the '314 Application was published, or at the earliest, on June 24, 2020, when the '314 Application was filed. Gleitzman, on the other hand, argues that these claims accrued in mid-2017 when Gleitzman first began developing intellectual property for Atomic and Replicant.

Again, "[f]or breach of contract claims, the wrongful act is the breach, and the cause of action accrues at the time of breach." *Meso*, 62 A.3d at 77; *see also Stanford*, 583 F.3d at 846. To determine when the breach allegedly occurred, the Court must look to the language of the contract.

Gleitzman promised in the Assignment Agreement to "promptly make full written disclosure to the Company . . . [of] all [his] right, title and interest throughout the world in and to any and all Company Inventions and all patent, copyright, trademark, trade secret and other intellectual property rights therein." Assign. Agt.

19

§4(d).[10]  It is not clear from the face of the agreement when, under the facts alleged, Gleitzman's duty to disclose was triggered—upon efforts to develop new technology, the filing or approval of a patent application, the issuance of a patent, or some other event.  The Court therefore cannot determine when these claims accrued, and if they are barred by the statute of limitations, without further factual development.  *See, e.g.*, *Kim v. Coupang, LLC*, 2021 WL 3671136, at *6 (Del. Ch. Aug. 19, 2021) ("Because the accrual date is not 'ascertainable from the face of the complaint,' . . . the Court is not able to adjudicate that defense on this motion to dismiss." (quoting *Cent. Mortg. Co.*, 2012 WL 3201139 at *16)); *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *22-23 (Del. Super. Aug. 16, 2021) (deferring judgment on a statute of limitations defense where the relevant contractual provision was ambiguous, creating a disputed fact); *Smith v. Mattia*, 2010 WL 412030, at *4 (Del. Ch. Feb. 1, 2010) (denying motion to dismiss premised on statute

---

[10] The Assignment Agreement is governed by California law.  Assign. Agt. § 12(a).  "Under California law, '[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.'"  *Centene Corp. v. Accellion, Inc.*, 2022 WL 898206, at *6 (Del. Ch. Mar. 28, 2022) (alteration in original) (quoting Cal. Civ. Code § 1638).  "[E]xtrinsic evidence may be used to explain the meaning of a contract even if the contract appears unambiguous on its face."  *Id.*  "The logic behind the California approach is that the meaning of a contract 'can only be found by interpretation in light of all the circumstances that reveal the sense in which the writer used the words.'"  *CA, Inc. v. Ingres Corp.*, 2009 WL 4575009, at *29 (Del. Ch. Dec. 7, 2009) (citation omitted), *aff'd*, 8 A.3d 1143 (Del. 2010).

of limitations where "the Court [could not] yet say when the cause of action on th[e] claim accrued").

Because it is not clear from the face of the Second Amended Complaint when Plaintiff's claim for breach of the Assignment Agreement premised on the failure to disclose accrued, I recommend that the Court deny the motion to dismiss Count Seven.

**C.    The Motion To Dismiss Count Eight For Tortious Interference With The Assignment Agreement Is Granted.**

In Count Eight, Plaintiff alleges that Replicant tortiously interfered with the Assignment Agreement by "falsely concealing Gleitzman's status as an inventor" in the Provisional Applications and the '453 Application, and by entering into the Replicant Assignment Agreement with Gleitzman "in defiance of Gleitzman's pre-existing assignment obligations to Ruse." SAC ¶ 174.

As set forth below, Count Eight should be dismissed as time-barred.

**1.    What Is The Presumptive Limitations Period?**

The parties agree that Plaintiff's claim for tortious interference with contract arises under California law. ROB at 8; AB at 21. In Delaware, the statute of limitations governing a claim for tortious interference with contractual relations is three years. 10 *Del. C.* § 8106(a). "The statute of limitations for tortious interference with contract in California is two years." *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013); Cal. Civ. Proc. Code § 339(1). Under the

Borrowing Statute, California's shorter, two-year limitations period applies. *See* 10 *Del. C.* § 8121.

## 2. When Did The Claim Accrue?

"A tortious-interference claim typically accrues 'at the date of the wrongful act.'" *DC Comics*, 938 F. Supp. 2d at 948 (citation omitted). "[I]n no event does a claim accrue 'later than the actual breach of contract by the party who was wrongfully induced to breach,' because the breach is the culmination of the alleged wrong." *Id.* (citation omitted); *see also Redisegno.com, S.A. de C.V. v. Barracuda Networks, Inc.*, 2020 WL 3971622, at \*2-3 (N.D. Cal. July 14, 2020) ("Under California law, the two-year statute of limitations begins to run no later than the date of the breach or termination of the underlying contract." (citing *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000))); *Lynwood Invs. CY Ltd. v. Konovalov*, 2022 WL 3370795, at \*6 (N.D. Cal. Aug. 16, 2022) (same).[11] Therefore, at the latest,[12] the tortious interference claim accrued on June 23, 2020, when the

---

[11] The same is true under Delaware law. *See Pomeranz*, 2005 WL 217039, at \*8 (finding "the plaintiffs' claims accrued on . . . the date that the allegedly wrongful Withdrawal Agreement was executed" where the plaintiff alleged that a limited partner tortiously interfered with a limited partnership agreement by entering into a withdrawal agreement with the limited partner in breach of the partnership agreement).

[12] Replicant contends the tortious interference claim accrued earlier, either on December 27, 2018, when Replicant allegedly "induced . . . Gleitzman's breaches . . . by . . . concealing Gleitzman's status as an inventor" of the '038 Patent, or on February 27, 2020, when "Gleitzman . . . assign[ed] all of his rights in the '038 Patent to Replicant." SAC ¶¶ 157, 174.

'038 Patent was issued and Plaintiff's breach of contract claim for failure to assign accrued. *See* pp. 14-18, *supra.*

Assuming a June 23, 2020 accrual date, the statute of limitations presumptively ran for Count Eight two years later, on June 23, 2022—four months after the filing of the Initial Complaint on February 22, 2022, but more than a year before the filing of the Second Amended Complaint on June 22, 2023. Therefore, Count Eight is time-barred unless tolling applies or Count Eight relates back to the filing of the Initial Complaint.

### 3. Does Tolling Apply?

Plaintiff contends that under California's "discovery rule," the two-year statute of limitations governing the tortious interference claim was tolled until sometime in 2023, when Plaintiff discovered the factual basis for his claim during discovery in this action. Replicant counters that Plaintiff was on constructive or inquiry notice of the claim by June 23, 2020.

Under California law, a claim for tortious interference with a contract "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder." Cal. Civ. Proc. Code § 339(1).

> This so-called "discovery rule" "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." A plaintiff "discovers" the cause of action the moment "he at least suspects a factual basis, as opposed to a legal theory," for the elements of the claim—in other words, when plaintiff suspects "that someone has done something wrong to him." . . . "[T]he discovery

23

rule postpones accrual of a cause of action until plaintiff discovers the facts underlying its claims." But a plaintiff need not suspect facts "supporting each specific legal element of a particular cause of action" to have discovered that cause of action; rather, California courts "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."

*DC Comics*, 938 F. Supp. 2d at 951 (citations omitted).[13] "By expressly providing for the common-law discovery rule and no other common-law tolling principles, section 339 appears to reflect the legislature's clear and unequivocal intent to preclude application of common-law tolling mechanisms other than the discovery rule." *Id*. at 950.

---

[13] *See also Vera v. REL-BC, LLC*, 281 Cal. Rptr. 3d 45, 54, 69 (Ct. App. 2021) ("The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing."); *Fox*, 110 P.3d at 920 ("[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation."); *Norgart v. Upjohn Co*., 981 P.2d 79, 88-89 (Cal. 1999) (same); *Jolly v. Eli Lilly & Co*., 751 P.2d 923, 927-28 (Cal. 1988) (same).

California's approach is consistent with Delaware law. *See Pomeranz*, 2005 WL 217039, at *3 ("Inquiry notice does not require full knowledge of the material facts; rather, plaintiffs are on inquiry notice when they have sufficient knowledge to raise their suspicions to the point where persons of ordinary intelligence and prudence would commence an investigation that, if pursued would lead to the discovery of the injury."); *Merck & Co. v. SmithKline Beecham Pharms. Co*., 1999 WL 669354, at *42 (Del. Ch. Aug. 5, 1999) ("Even when tolled, the statute of limitations is suspended only until a plaintiff discovers his rights or, by exercising reasonable diligence, should have discovered such rights."), *aff'd*, 746 A.2d 277 (Del. 2000), and *aff'd*, 766 A.2d 442 (Del.).

24

At the latest,[14] Plaintiff had constructive notice of the facts underlying his tortious interference claim by June 23, 2020, when the '038 Patent was issued. "[I]ssuance of a patent and recordation in the Patent Office constitute notice to the world of its existence." *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397-98 (9th Cir. 1991) (quoting *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387 (1936)). "The issuance of a patent gives a plaintiff constructive notice of its claims if the patent reveals information sufficient to alert a reasonable person of the need to inquire further." *Int'l Bus. Machines Corp. v. Zachariades*, 1993 WL 443409, at *2 (N.D. Cal. Oct. 27, 1993), *aff'd in part, rev'd in part on other grounds*, 70 F.3d 1278.

Plaintiff asserts that he was not on constructive notice of the '038 Patent because he "had no reason or duty to scour the patent records." AB at 20. As support for that position, he looks to *General Electric Co. v. Wilkins*, in which the United States District Court for the Eastern District of California found that an engineer claiming an ownership interest in a patent was not on constructive notice of his claims solely because a publicly issued patent failed to include him as an inventor.

---

[14] Replicant asserts that, in fact, Plaintiff had constructive notice of his tortious interference claim eighteen months earlier, in December 2018, when the '038 Application was published. *See* ROB at 19 ("Ruse had 'reason to at least suspect' that it had a claim against Replicant at the time the '038 Patent application listing only Abraham as an inventor was published on December 27, 2018.").

2011 WL 3163348 (E.D. Cal. July 26, 2011). The court recognized that the engineer "had constructive notice of the existence of the . . . Patent upon its issuance," but explained that "knowledge of a patent's existence is not the same as knowledge of a cause of action based on conduct underlying issuance of the patent." *Id.* at \*5. The court concluded that the plaintiff "ha[d] not carried its burden of establishing that [the engineer] had reason to know of his claims concerning the . . . Patent by virtue of its issuance," where no other facts put him on notice of his claims and he "would have had to scour the Patent Office's records for all patents issued to Plaintiff each year and then review the substance of each patent to determine whether he should have been named as an inventor." *Id*.

Notably, other decisions under California law have declined to limit constructive notice of patents to individuals actively working in the patent field or who otherwise are under a duty to investigate the patent docket. *See, e.g.*, *Klang v. Pflueger*, 2014 WL 12587028, at \*5 (C.D. Cal. Oct. 2, 2014) (acknowledging authority that "limit[s] a finding of constructive notice," but explaining that "[t]his approach . . . is not controlling law" and "the broader rule . . . controls the outcome here" (quoting *Wang*, 2014 WL 1410346, at \*6-7)).

Under either approach, the result here is the same, because the Second Amended Complaint alleges additional facts that, taken as true, demonstrate Plaintiff was under a duty to investigate the patent record. The Second Amended Complaint

26

alleges that Plaintiff knew (1) Gleitzman began working with Replicant in mid-2017 to develop its "code, design, content, product and brand";[15] (2) by 2018, that relationship had generated "work product," which Ruse agreed through the ICA would remain the "sole and exclusive property" of Atomic for one year;[16] and (3) in 2020, Gleitzman and Replicant wanted Ruse to relinquish its "ownership rights to the technology underlying the '038 Patent" through a similar agreement.[17]  Those pled facts should have given rise to at least a suspicion "that [Ruse's] business relation was being tampered with," creating a duty to consult the patent records.  *DC Comics*, 938 F. Supp. 2d at 951.[18]  Had Plaintiff done so, he would have discovered the '038 Patent, putting him on notice of the wrongdoing underlying his claims—

---

[15] SAC ¶¶ 39-41.

[16] *Id*. ¶¶ 10, 58.

[17] *Id*. ¶ 10.

[18] Plaintiff asserts that "Ruse had no reason to go looking for patent or patent applications based on the course of dealing between the parties, and in light of Gleitzman's fiduciary obligations to Ruse."  AB at 23.  But once Plaintiff became aware of facts that would cause suspicion in a reasonably prudent person, he could no longer rely on Gleitzman's representations (or lack thereof) as a fiduciary.  *See In re Tyson Foods, Inc*., 919 A.2d 563, 600 (Del. Ch. 2007) ("Where plaintiffs have relied upon a fiduciary's statements . . . they are not on inquiry notice of the harm done to them *unless they had some reason to suspect that the information upon which they relied was inaccurate*." (emphasis added)); *see also Regents*, 2017 WL 3215356, at *5 (explaining that where the plaintiff "was on both actual and constructive notice of its potential claims," it could not "be heard to complain . . . that any actions on [the defendant's] part prevented it from filing suit").

*i.e.*, that Gleitzman invented the '038 Technology but assigned it to Replicant instead of Ruse.

Accordingly, the statute of limitations was not tolled under the discovery rule and Count Eight is time-barred unless it relates back to the Initial Complaint.

### 4. Does The Claim Relate Back To The Initial Complaint?

"Notwithstanding the general liberal policy toward amendments imparted by Rule 15, a motion to add or substitute a party after the statute of limitations has run must be denied if it fails to satisfy the requirements of Rule 15(c)." *Shulman v. Kolomoisky*, 2023 WL 1453658, at *3 (Del. Ch. Feb. 1, 2023) (quoting *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993)). Under Court of Chancery Rule 15(c),

> An amendment of a pleading relates back to the date of the original pleading when
>
> > (1) relation back is permitted by the laws that provide the statute of limitations applicable to the action, or
> >
> > (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, or
> >
> > (3) the amendment changes the party or the name of the party against whom a claim is asserted if the foregoing provisions of subdivision (2) of this paragraph are satisfied and, within 120 days of the filing of the complaint, or such additional time the Court allows for good cause shown, the party to be brought in by amendment

(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; and

(B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Ct. Ch. R. 15(c).

The parties have not argued that relation back is permitted under California law. *See* Ct. Ch. R. 15(c)(1). The relation-back analysis is therefore governed by Court of Chancery Rule 15(c)(3), which "establishes the 'relation back' doctrine' applicable" when an amendment adds a claim against a party that was not named in the original pleading—here, Replicant. *Shulman*, 2023 WL 1453658, at *3 (quoting *Allmaras v. Bd. Of Adj. of Sussex Cnty.*, 238 A.3d 142, 2020 WL 4669008 at *2 (Del. 2020) (TABLE)). Under that subsection,

If the amending party seeks to add a new party to the action after the running of the applicable statute of limitations, that party must, first, show that the amendment arises out of the same conduct, transaction, or occurrence as timely set forth in the original pleading. Next, the amending party must show that the new party "has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits . . . ." Finally, the amending party must also show that the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the [new] party."

*Ciabattoni v. Teamsters Loc. 326*, 2017 WL 3175617, at *2 (Del. Super. July 25, 2017) (alteration and second ellipsis in original) (citing Ct. Ch. R. 15(c)).

Here, the Second Amended Complaint does not allege (and Plaintiff does not argue) that Plaintiff was mistaken about the identity of the proper defendant for his tortious interference claim.  Instead, Plaintiff argues for a construction of Rule 15(c) that eliminates the "mistaken identity" requirement.  That construction is inconsistent with both the plain language of the Rule and with case law interpreting it.  *See Shulman*, 2023 WL 1453658, at *3 ("[A] party seeking relief under Rule 15(c) must still show that it was mistaken as to the identity of the proper defendant." (quoting *Allmaras*, 2020 WL 4669008 at *2)); *CCS Invs., LLC v. Brown*, 977 A.2d 301, 313 (Del. 2009) ("The courts generally decline to find a mistake when the plaintiff cannot demonstrate an intent to include the unnamed party before the limitations period expired . . . .").

Because Plaintiff has not shown he was mistaken about Replicant's identity, Count Eight does not relate back to the Initial Complaint.  Plaintiff filed the Second Amended Complaint on June 22, 2023—more than two years after the tortious interference claim accrued, at the latest, on June 23, 2020.  As a result, Count Eight should be dismissed as time-barred.[19]

---

[19] Dismissal should be with prejudice pursuant to Court of Chancery Rule 15(aaa).  To argue dismissal should be without prejudice, Plaintiff points to *In re Mindbody, Inc., Stockholder Litigation*, 2020 WL 5870084, at *34 & n.309 (Del. Ch. Oct. 2, 2020), and *In re Dell Technologies Inc. Class V Stockholders Litigation*, 2020 WL 3096748, at *43 (Del.

**D.** **The Motion To Dismiss Count Six Seeking A Declaratory Judgment That Ruse Is An Assignee Of The '038 Patent Is Denied.**

In Count Six, Plaintiff seeks a declaration that Ruse is an assignee of the '038 Patent. The parties debate whether Count Six sounds in contract or tort and is subject to a two-, three-, or four-year statute of limitations under Delaware or California law. In my view, Plaintiff's declaratory judgment claim could be viewed as requesting relief to remedy the harm alleged in *either* Count Seven *or* Count Eight. But, in any event, the Court plainly has the power to decide whether Ruse is an assignee of the '038 Patent as a consequence of resolving Plaintiff's contract claims. Therefore, to the extent Count Six is a separate "claim," it survives alongside Count Seven.[20]

Ch. June 11, 2020), in which the Court dismissed claims without prejudice where discovery might uncover a compelling reason to revisit dismissal. Because Plaintiff was on constructive notice of the '038 Patent, factual development cannot save the tortious interference claim, and dismissal should be with prejudice.

[20] Replicant remains a necessary party given the relief Plaintiff seeks. *See Meso*, 2011 WL 1348438, at *18 (declining to dismiss non-parties to a contract where "questions of law and fact abound with regard to whether those entities also may be subject to injunction or other relief that might be granted to Plaintiffs in this action" and the Court therefore could not "rule out the possibility that certain equitable relief granted by this Court would include relief against" those parties) (citing Ct. Ch. R. 19(a)).

## III. CONCLUSION

For the reasons explained above, I recommend that the Court deny the Motions to Dismiss as to Counts Six and Seven and grant the Motions to Dismiss as to Count Eight. This is a final report under Court of Chancery Rule 144. Exceptions to this final report are stayed in accordance with the Chancellor's August 8, 2023 assignment letter.